UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

VASILE SIMONCA,

           Plaintiff,

     v.

MICHAEL B. MUKASEY, Attorney General of the United States Department of Justice, MICHAEL CHERTOFF, Secretary of the United States Department of Homeland Security, et al.,

           Defendants.

NO. CIV. S-08-1453 FCD GGH

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on a motion to disqualify plaintiff Vasile Simonca's ("plaintiff") counsel of record, Jagdip Singh Sekhon ("Sekhon"), brought by defendants Michael B. Mukasey, Attorney General of the United States Department of Justice, Michael Chertoff, Secretary of the United States Department of Homeland Security, Condoleeza Rice, Secretary of the United States Department of State and Carol Webster, Special Agent of the United States Immigration and Customs Enforcement

1

(collectively, "defendants" or the "government").[1]  The government moves to disqualify Sekhon as counsel in this civil action due to an alleged conflict of interest created by counsel's indictment in a related criminal case, United States v. Caza, et al., CR No. 06-58 FCD.  The government maintains that because the criminal prosecution of Sekhon, and others, is itself the cause of the delay in adjudicating the asylum applications that are the subject of this lawsuit, Sekhon cannot properly continue his representation of plaintiff and the proposed class.

**BACKGROUND**

On June 24, 2008, plaintiff filed this action on behalf of himself, and all others similarly situated, seeking declaratory, injunctive and mandamus relief pursuant to 28 U.S.C. §§ 1361 and 2241, governing writs of mandamus and habeas corpus, and the Administrative Procedures Act, 5 U.S.C. § 702.  Plaintiff filed, as of right, a first amended complaint on June 26, 2008, which is the operable pleading in this action.  Therein, plaintiff alleges that the adjudication of his asylum application was improperly delayed due to the ongoing criminal investigation of plaintiff's attorneys, who are alleged to have prepared fraudulent asylum applications.

In the pending criminal prosecution of United States v. Caza, et al., filed on October 18, 2006, the government indicted Sekhon and four of his colleagues at the law firm of Sekhon & Sekhon on allegations of false statements in asylum applications

---

[1]  Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs.  See E.D. Cal. Local Rule 78-230(h).

2

and conspiracy to defraud the United States, in violation of 18 U.S.C. §§ 371, 982(a)(6)(A)(ii)(I) & (II), and 1001.  The government asserts that Sekhon and the other Caza defendants prepared and submitted applications for asylum and withholding of removal to the United States Immigration and Customs Enforcement that contained fabricated claims of persecution.  The criminal matter is set for trial on February 24, 2009.

Plaintiff Simonca is one of the aliens who was represented by the Sekhon & Sekhon law firm in immigration proceedings which are the subject of the criminal prosecution.  Plaintiff submitted an application for asylum and withholding of removal in April 2002.  In October 2003, he was placed into removal proceedings, and on November 24, 2003, the Immigration Judge denied his application and ordered plaintiff removed as charged.  Plaintiff appealed to the Board of Immigration Appeals, and his appeal was successful.  On May 26, 2005, his case was remanded to the Immigration Judge for a decision consistent with the Board's conclusions.  After the remand, the United States Immigration and Customs Enforcement informed the Immigration Judge of the criminal investigation into the Sekhon & Sekhon law firm.  On March 10, 2006, plaintiff's application for asylum and withholding of removal was suspended and his case administratively closed pending the outcome of the Caza trial. (FAC at ¶s 43-77.)

Plaintiff contends that in suspending his application and administratively closing his case, and the cases of others similarly situated, defendants have violated his right to the adjudication of his asylum application under the Immigration and

3

1  Nationality Act, and its implementing regulations, and have
2  denied him his right to due process of law under the Fifth
3  Amendment.  Plaintiff alleges that as a result of defendants'
4  actions, he and other applicants for asylum have been denied
5  their statutory right to expeditious and final adjudications of
6  their claims; for those asylees that have established their
7  eligibility for relief, they have been denied their right to
8  immigrate their family members; and other asylees have been
9  denied their permanent resident status which, once obtained,
10 would allow them to seek United States citizenship.  (FAC at ¶
11 77.)

**STANDARD**

Motions to disqualify counsel are strongly disfavored, as they often pose the very threat to the integrity of the judicial process that they purport to prevent.  <u>Visa U.S.A. v. First Data Corp.</u>, 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003); <u>In re Marvel</u>, 251 B.R. 869 (N.D. Cal. 2000) ("A motion for disqualification of counsel is a drastic measure which courts should hesitate to impose except when of absolute necessity.  They are often tactically motivated; they tend to derail the efficient progress of litigation.")  As such, requests for disqualification "should be subjected to particularly strict judicial scrutiny."  <u>Optyl Eyewear Fashion Int'l Corp. v. Style Cos.</u>, 760 F.2d 1045, 1050 (9th Cir. 1985) (citations omitted).  Ultimately, the decision of whether to disqualify counsel is within the sound discretion of the district court.  <u>Trone v. Smith</u>, 621 F.2d 994, 999 (9th Cir. 1980).  The court must weigh in deciding whether disqualification is warranted, the combined effect of:

4

>  a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding, against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest.

Allen v. Academic Games League of America, Inc., 831 F. Supp. 785, 789 (C.D. Cal. 1993) (citations omitted).

Pursuant to Eastern District Local Rule 83-180(e), the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the rules of Professional Conduct of the State Bar of California and any applicable court decisions have been adopted as the standards of professional conduct in this court.  This rule is enforced through the court's supervisory power and its inherent authority to preserve the integrity of the adversarial process.  Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991).

**ANALYSIS**

Defendants argue there is a "patent conflict of interest" between Sekhon's role as counsel in this civil matter on the one hand and his position as indicted defendant in the Caza criminal matter because: (1) the subject matter of both actions is the same--the alleged filing of fraudulent asylum applications--and the sole claim in this action is that the pending criminal matter has caused the unlawful delay in adjudication of plaintiff's and the proposed class' asylum applications; (2) the timetable for adjudication of the underlying asylum applications hinges entirely on the disposition of the criminal matter; (3) the outcome of the criminal proceedings could affect the substantive

5

adjudication of the underlying asylum applications; (4) civil discovery in this matter could create a conflict with evidentiary matters in the criminal proceeding; and (5) any settlement or plea agreement in either case will influence the other pending matter.  As a result, the government contends disqualification of counsel is required because Sekhon's dual role as attorney for plaintiff and the proposed class and criminal defendant in matters "so intertwined" both "degrades the integrity" of the court and "interferes with the administration of justice."  (Mem. of P.& A., filed Sept. 26, 2008, at 4:9-10.)

Plaintiff responds that defendants' motion must be denied in the first instance because defendants lack standing to move to disqualify plaintiff's counsel.  Plaintiff alternatively argues that even if defendants have standing, disqualification of counsel is not warranted because there exists no conflict of interest between plaintiff and his counsel under the pertinent Rules of Professional Conduct of the State Bar of California, and defendants' motion is merely a tactical attempt to undermine plaintiff's complaint.

As to standing, as a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless a former or current client moves for disqualification.  Colyer v. Smith, 50 F. Supp. 2d 966, 969 (C.D. Cal. 1999).  Although the Ninth Circuit has not squarely addressed whether a non-client may raise an objection to opposing counsel, the court in Colyer adopted the majority rule that allows only former and current

clients standing to seek to disqualify opposing counsel.[2] Id. Several California district courts have followed Colyer. See e.g. Yee v. Capital Servs., 2006 WL 3050827 (N.D. Cal. Oct. 26, 2006); Canatella v. Stovitz, 2004 WL 2648284 (N.D. Cal. Sept. 13, 2004); Decaview Dist. Co., Inc. v. Decaview Asia Corp., 2000 WL 1175583 (N.D. Cal. Aug. 14, 2000). This court finds Colyer and these subsequent Northern District cases persuasive and applies the majority rule to this case.

In Colyer, the court did, however, recognize an exception to the strict majority rule requiring client-status to move to disqualify counsel. The court held that a third party (non-client) has standing to object to opposing counsel's representation "if the litigation will be so infected by the presence of opposing counsel so as to impact the moving party's interest in a just and lawful determination of its claims." Canatella, 2004 WL 2648284, *2 (citing Colyer, 50 F. Supp. 2d at 971-72). For example, in a case where the ethical breach by counsel is so "severe, manifest and glaring" that it "obstructs the orderly administration of justice," the third-party who finds his claims so obstructed has standing to request disqualification. Colyer, 50 F. Supp. 2d at 971-72.

---

[2] Without deciding the issue, as it was not presented to the court, in Kasza v. Browner, 133 F.3d 1159, 1171 (9th Cir. 1998), the Ninth Circuit noted that a movant who is neither a former or current client *likely* did not have standing to seek disqualification of opposing counsel. Subsequent cases have recognized that the Ninth Circuit's remarks in Kasza suggest that the court would follow the majority rule, granting standing to only former and current clients, if presented with the issue. See e.g., Xcentric Ventures, LLC v. Stanley, 2007 WL 2177323, *3 (D. Ariz. July 27, 2007).

7

Because Article III standing, necessary for any party to seek relief in federal court, requires that the party have personally suffered from an "injury in fact" which is causally related to the conduct in issue,[3] courts have emphasized in the disqualification context, that the moving party must demonstrate how opposing counsel's representation in the case causes the *movant* injury. It is not sufficient that the party moving for disqualification shows that the lawyer's client may be injured by his counsel's continued involvement in the case. Xcentric Ventures, LLC v. Stanley, 2007 WL 2177323 (D. Az. July 27, 2007) (finding the moving party's arguments pertaining to opposing counsel's proprietary and personal interests in the case which were predicated exclusively on harm that the plaintiffs might suffer from their counsel's continued representation insufficient to confer standing). The moving party must show how the "diminished quality of the representation" of an opposing party causes the *movant* injury. Id. at *2.

Thus, it is defendants ultimate burden to show they have standing to raise the issues in their disqualification motion in order for the court to exercise jurisdiction over the motion. See O'Conner v. Jones, 946 F.2d 1395, 1400 (8th Cir. 1991). Accordingly, the court must consider whether defendants have demonstrated an injury in fact, that *they* will endure, as opposed

---

[3] To satisfy the requirements for standing under Article III of the United State Constitution, the party seeking relief must show: (1) he has suffered an injury in fact that is concrete and particularized and actual or imminent; (2) the injury must be fairly traceable to the challenged action of the opposing party; and (3) it is likely that the injury will be redressed by a favorable decision. Wilbur v. Locke, 423 F.3d 1101, 1107 (9th Cir. 2005).

to plaintiff, as a result of Sekhon's representation of plaintiff and the proposed class in this action.

The court finds that defendants have not made the requisite showing. Each of the alleged conflicts described above is predicated exclusively on harm that plaintiff and the proposed class might suffer as a result of counsel's continued representation of them. Defendants contend that because of the overlapping subject matter of the two actions, counsel's status as an indicted defendant could adversely affect plaintiff and the class' interests in this civil action and/or the underlying asylum proceedings. Defendants maintain that because the timetable for adjudication of the underlying asylum applications hinges on the disposition of the criminal action, plaintiff's civil action could be delayed by Sekhon's conduct in the criminal action. Similarly, defendants assert the outcome of the criminal proceedings could negatively affect the substantive adjudication of the underlying asylum applications, if for example, Sekhon was to enter a plea admitting to the submission of fraudulent applications. Defendants also contend that unspecified discovery conflicts could arise between the two actions which would detrimentally affect plaintiff's interests in this civil action.

Each of these potential adverse consequences would affect plaintiff's and the proposed class' interests in this case and in obtaining asylum via their underlying immigration applications. In making their motion, defendants have not articulated any interest of their own which would be negatively impaired by Sekhon's continued representation of plaintiff in this case.

Defendants' bald claim of a "degradation of the integrity of the court" and alleged "interference with the administration of justice" as a result of counsel's involvement in this case is simply insufficient, under the case law set forth above, to confer standing on defendants, as non-clients, to disqualify opposing counsel. See Canatella, 2004 WL 2648284, *2 (holding the defendant's "obliqu[e] references [to] how a potential conflict of interest may impact his interests in a just and lawful determination of his claims" insufficient to confer standing); Xcentric Ventures, LLC, 2007 WL 2177323, *2 (holding the defendants failed to establish standing to seek disqualification of opposing counsel where they failed to show how the diminished quality of the plaintiff's representation caused defendants any injury); Yee, 2006 WL 3050827, *1 (finding the defendants lacked standing to disqualify the plaintiff's counsel on the basis of his dual role as counsel and potential witness in the case since defendants did not show how that dual role detrimentally affected them, as opposed to the plaintiff).

To move to disqualify opposing counsel, as non-clients, defendants are required to show how counsel's representation of plaintiff and the proposed class detrimentally affects their interests in a just and fair determination of this case. Defendants have not done so. Indeed, at best, defendants have simply shown how the interests of plaintiff and the proposed class may be harmed by Sekhon's continued role as counsel in this case. However, such injury *to plaintiff* is not sufficient to confer standing on defendants to move for disqualification. Moreover, the court notes that plaintiff in this case has

10

attested to his knowledge about the criminal indictment of Sekhon and other members of Sekhon's law firm and declares that he wishes to have Sekhon continue in this matter as his attorney. (Ex. A to Opp'n, filed Oct. 31, 2008).

Only in the reply do defendants acknowledge their heavy burden in establishing standing to bring this motion. For the first time therein, defendants argue that *they* may be harmed by Sekhon's continued representation in this case because (1) a delay in the criminal trial date could affect the ability of the parties to settle this case; (2) the setting of a civil discovery schedule could affect the government's ability to properly prepare for the criminal trial; and (3) an order in this case to adjudicate the asylum applications could impact the government's criminal investigation. These are new arguments, raised for the first time in the reply, and as such, they may be properly disregarded by the court. Zamani v. Carnes, 491 F.3d 990, 996 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.") However, in the court's discretion, it has considered these arguments but finds them insufficient to establish standing.

It is the government's burden to substantiate an actual, particularized and immediate injury in fact. See Xcentric Ventures, LLC, 2007 WL 2177323, *2 (recognizing that the defendants must show "imminen[t]" injury to establish standing); Canatella, 2004 WL 2648284, *2 (recognizing that the mere "possibility" that a conflict of interest could affect the movant's interests is insufficient to establish standing); Colyer, 50 F. Supp. at 973 (holding that the defendant's interest

in the administration of justice is "insufficiently concrete and particularized" to support a finding of standing). Here, the government points to only *potential* injury of a *speculative* nature. The government does not give any details as to how its investigation of the criminal matter will be detrimentally affected by Sekhon's representation in this case or how any proceedings in this civil case will negatively impact the government's ability to try the criminal matter. (Reply, filed Nov. 6, 2008.) Without specifics, this court cannot find that the government will sustain an injury in fact that is attributable to Sekhon's continued representation of plaintiff and the proposed class in this case.

Because defendants lack standing to bring the instant motion, the court does not reach the parties' other arguments for and against the granting of this motion.[4] Defendants' motion must be denied on standing grounds.

///
///
///
///
///
///

---

[4] The court does note, however, that the government has failed to identify any specific Rule of Professional Conduct of the State Bar of California which plaintiff's counsel is violating by his representation of plaintiff and the proposed class in this action. At this juncture, it does not appear counsel is in violation of any rules of professional conduct; indeed, as set forth above, he has apparently made full disclosure to his client as to the related criminal proceedings, and his client wishes to retain him as counsel in this matter.

12

**CONCLUSION**

For the foregoing reasons, defendants' motion to disqualify plaintiff's counsel is DENIED.

IT IS SO ORDERED.

DATED: November 25, 2008

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

13